UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
RENO, NEVADA

ONEBEACON INSURANCE COMPANY,  ) 3:09-CV-36-ECR-RAM
     Plaintiff, )
      )
vs. ) **Order**
      )
PROBUILDERS SPECIALTY INSURANCE )
COMPANY, FORMERLY KNOWN AS )
BUILDERS & CONTRACTORS INSURANCE )
COMPANY, )
      )
     Defendant. )

This diversity case is a dispute between two insurers regarding litigation expenses incurred in the defense of a common insured. Plaintiff OneBeacon Insurance Company ("OneBeacon") alleges that it incurred defense fees and costs of at least $470,000 in connection with defending the insured. OneBeacon seeks reimbursement of some of that amount from Defendant ProBuilders Specialty Insurance Company ("ProBuilders"). ProBuilders denies that it had any obligation to contribute to the defense of the insured.

Now pending are Probuilders' motion to dismiss (#10) and motion for summary judgment (#5), both of which were filed on March 4, 2009. For the reasons stated below, both motions will be denied.

# I. Factual Background

OneBeacon is the transferee of certain rights and obligations of Hawkeye-Security Insurance Company, which had insured Jess Arndell Construction Company ("Arndell Construction"). (Complaint ¶ 5 (#1).) OneBeacon alleges that ProBuilders (under its previous name, Builders & Contractors Insurance Company) also issued "not less than two annual liability insurance policies" to Arndell Construction. (Id. ¶ 6.)

Arndell Construction was sued for alleged defects in the construction of homes in a development called Hidden Meadows, located in Reno, Nevada. (Id. ¶ 7.) OneBeacon, together with other insurers not involved in this lawsuit, provided Arndell Construction with a defense in that litigation, resulting in OneBeacon incurring "not less than $470,000.00" in defense fees and costs. (Id. ¶¶ 8-9.) OneBeacon notified ProBuilders of the litigation and demanded that ProBuilders participate in the defense pursuant to the ProBuilders insurance policies covering Arndell Construction. (Id. ¶ 10.) ProBuilders declined. (Id. ¶ 11.) This lawsuit ensued.

# II. Procedural Background

OneBeacon's complaint (#1), filed on January 21, 2009, asserts three causes of action. The first, for declaratory relief, seeks a declaration that ProBuilders was obliged to "equitably contribute toward the attorneys fees, costs, and expenses incurred" by OneBeacon in defending Arndell Construction. (Id. ¶ 18.) OneBeacon's second cause of action, for equitable contribution, alleges that ProBuilders owes OneBeacon "not less than $118,000.00"

as its contribution to the defense of Arndell Construction. (Id. ¶ 23.) The third cause of action, for equitable subrogation, is pled in the alternative to ProBuilders' equitable contribution claim. (Id. ¶ 26.) In its equitable subrogation claim, OneBeacon alleges that a portion of the fees and costs in the Hidden Meadows litigation fell outside of the scope of the OneBeacon policies, but that ProBuilders was required under its policies to bear that portion of the litigation expenses. (Id. ¶ 26.) OneBeacon, having already paid all of the litigation expenses, is therefore equitably subrogated to Arndell Construction's rights against ProBuilders for that portion of the expenses. (Id.)

On March 4, 2009, ProBuilders filed both a motion for summary judgment (#5) and a motion to dismiss (#10), accompanied by separately filed memoranda of points and authorities (##6, 11). On March 19, 2009, OneBeacon filed oppositions (##12, 13) to both motions. On March 23, 2009, ProBuilders replied (##17, 18).

### III. Motion to Dismiss

ProBuilders argues in its motion to dismiss (#10) and the memorandum of points and authorities in support thereof (#11) that OneBeacon's complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, ProBuilders seeks a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[1]

---

[1] Because we also rule on ProBuilders' motion for summary judgment (#5) in this Order, ProBuilders' request for a stay of the requirement of filing an answer pending the outcome of that motion is moot.

3

**A. Rule 12(b)(6) Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (clarifying that Twombly applies to pleadings in "all civil actions"). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (noting that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks omitted). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

4

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. FED. R. CIV. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. Id. at 909; see FED. R. EVID. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

**B. Analysis**

ProBuilders' argument that OneBeacon's complaint (#1) fails to state a claim is based on the lack of "any allegation of the terms of the ProBuilders' [sic] policy or the reasons underscoring the belief that [OneBeacon] is entitled to contribution." (D.'s Memo. at 2 (#11).) ProBuilders cites a California case for the proposition that "contribution exists only between two insurers for the same insured, who share the same level of risk, i.e., primary or excess coverage." (Id. (citing Md. Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1089 (2000)).) Because the complaint (#1) does not allege details such as "the policy numbers, the policy years, the terms of the coverage, whether it is primary or excess, or other critical information," ProBuilders argues that OneBeacon has failed to state a claim for contribution. (D.'s Memo. at 2 (#11).)

The Federal Rules of Civil Procedure describe "a liberal system of 'notice pleading.'" Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even after Twombly, as noted above, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson 551 U.S. at 93 (2007) (internal quotation marks omitted).

Here, OneBeacon's complaint (#1) provides a short and plain statement of its claim that is more than adequate. ProBuilders has received fair notice of what OneBeacon's claim is and the grounds upon which it rests, namely, that ProBuilders was contractually obligated to contribute to the defense of Arndell Construction, but it failed to do so, to OneBeacon's detriment. Specific facts, such as policy numbers and the precise language of the policies giving rise to the alleged contractual obligation, need not be pleaded. Thus, ProBuilders' motion to dismiss pursuant to Rule 12(b)(6) will be denied.

**C. Motion for a More Definite Statement**

In the alternative to its motion to dismiss pursuant to Rule 12(b)(6), ProBuilders moves for a more definite statement pursuant to Rule 12(e). ProBuilders' argument again rests on the lack of detail in the complaint: ProBuilders argues that the "requisite terms of the contract under which [OneBeacon] seeks contribution" must be alleged in the complaint. (D.'s Memo. at 3 (#11).)

ProBuilders' argument fails because "Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." Woods v. Reno Commodities, Inc., 600 F. Supp. 574, 580 (D. Nev. 1984). "Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994). If a complaint is "specific enough to apprise the defendant of the substance of the claim asserted against [it]," a Rule 12(e) motion should be denied. San Bernardino Pub. Employees' Ass'n v. Stout, 946 F. Supp. 790, 804 (C.D. Cal. 1996).

7

Here, as noted above, OneBeacon's complaint is sufficient to apprise ProBuilders of the substance of the claim asserted against it. Indeed, ProBuilders has demonstrated that it does not find OneBeacon's claims in any way unintelligible: it immediately moved for summary judgment, making very specific arguments regarding OneBeacon's claims, instead of waiting to conduct discovery first. Thus, ProBuilders' motion to dismiss (#10) will be denied.

### IV. Motion for Summary Judgment

ProBuilders seeks summary judgment based on the language of ProBuilders' insurance policies covering Arndell Construction. Specifically, ProBuilders argues that under its policies it was only obligated to provide a defense to Arndell Construction on a contingent basis, if no other insurance coverage was available. ProBuilders notes that Arndell Construction received a full defense from OneBeacon. Hence, according to ProBuilders, other insurance coverage was available, and ProBuilders' contingent duty to defend was not triggered.

**A. Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. N.W. Motorcycle Ass'n v. United States Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a

matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form - namely, depositions, admissions, interrogatory answers, and affidavits - only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary

judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

**B. Analysis**

    1. Applicable Law

A federal court sitting in diversity must apply the substantive law of the forum state in which it resides. Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 913 (9th Cir. 2007) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). Accordingly, we must construe the policies at issue in this case as a Nevada state court would if presented with the same question. Capitol Indem. Corp. v. Blazer, 51 F. Supp. 2d, 1080, 1084 (D. Nev. 1999). In the absence of Nevada Supreme Court precedent, we "must make a reasonable determination of the result [it] would reach if it were deciding the case." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 885 n.7 (9th Cir. 2000) (quoting Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1108 (9th Cir. 1993)).

### 2. "Risk Retention Group"

Before discussing ProBuilders' obligations under its policies, we must first address its arguments related to its status as a "risk retention group," rather than an ordinary insurance company. In essence, ProBuilders takes the position that policies issued by risk retention groups should be treated differently from those issued by ordinary insurance companies. ProBuilders asserts that "laws or court decisions which may be intended to benefit other insurance companies do not necessarily apply to Risk Retention Groups (D.'s Memo. at 2-3 (#6)), and that the policies it issues are "insurance like product[s]" (id. at 12), rather than simply insurance.

Risk retention groups function pursuant to the Liability Risk Retention Act of 1986 ("LRRA"), 15 U.S.C. §§ 3901-3906. They are essentially insurance cooperatives, allowing groups of similarly situated risk-bearers to share liability. See generally Nat'l Warranty Ins. Co. RRG v. Greenfield, 214 F.3d 1073, 1074 (9th Cir. 2000); Preferred Physicians Mut. Risk Retention Group v. Pataki, 85 F.3d 913, 914 (2d Cir. 1996). Such groups would be illegal under some state laws, so the LRRA provides that they are exempt from certain state regulatory requirements relating to the formation and operation of insurance companies. See 15 U.S.C. §§ 3902(a), 3905(d). The LRRA also exempts risk retention groups from any state law that would "discriminate" against a risk retention group or any of its members, though they are not exempted from "State laws generally applicable to persons or corporations." 15 U.S.C. § 3902(a)(4).

The policies that risk retention groups issue are not "insurance like products," they are insurance. See 15 U.S.C. § 3901(a)(1) ("'insurance' means primary insurance, excess insurance, reinsurance, surplus lines insurance, and any other arrangement for shifting and distributing risk which is determined to be insurance under applicable State or Federal law"); see also Nat'l Warranty Ins. Co., 214 F.3d at 1082 ("We believe that in passing the LRRA, Congress decided that RRGs, as a group, were sufficiently trustworthy providers of insurance . . .") (emphasis added); Home Warranty Corp. v. Caldwell, 777 F.2d 1455, 1467 (11th Cir. 1985) ("A risk-retention group, by definition, was an organization providing insurance only to its members.") (emphasis added); 15 U.S.C. § 3905(c) ("The terms of any insurance policy provided by a risk retention group shall not provide or be construed to provide insurance policy coverage prohibited [by State law]") (emphasis added); NEV. REV. STAT. § 695E.200 ("A risk retention group shall not . . . (4) Issue any insurance policy coverage prohibited [by Nevada law]") (emphasis added). Moreover, the ProBuilders policies themselves repeatedly use the phrase "this insurance," including in the sections of the policies quoted above. (Podesta Decl., Exs. A, B (#9).) We conclude that Nevada law governing how insurance policies are to be construed is fully applicable to the ProBuilders policies at issue in this case.

ProBuilders' reliance on Alamo Rent-A-Car, Inc. v. State Farm Mut. Auto Ins. Co., 953 P.2d 1074 (Nev. 1998), is misplaced. Unlike the car rental agency in Alamo, ProBuilders is primarily in the business of underwriting insurance. See 15 U.S.C. § 3901(a)(4)(A),

(G) (defining "risk retention group" as an organization "whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members" and "whose activities do not include the provision of insurance other than (i) liability insurance for assuming and spreading all or any portion of the similar or related liability exposure of its group members; and (ii) reinsurance with respect to the similar or related liability exposure of any other risk retention group . . . ."). In contrast, Alamo Rent-A-Car was not primarily in the insurance business, and it is this circumstance that provides the foundation for the Nevada Supreme Court's decision in Alamo. See Alamo, 953 P.2d at 1077 ("We conclude it is better policy to make an insurance company the primary insurer over a rental agency which is not in the business of underwriting insurance for individual drivers."). Alamo's discussion of the law applicable to a self-insurance policy issued by a car rental agency to a renter simply does not apply to this case.

In short, ProBuilders' arguments that its policies must be treated differently under Nevada law from an insurance policy issued by an ordinary insurance company are without merit. With that issue resolved, we now turn to an examination of ProBuilders' duty to defend arising from its policies.

### 3. The Policies at Issue

Both ProBuilders and OneBeacon issued commercial general liability insurance policies to Arndell Construction. OneBeacon issued three policies to Arndell Construction, each covering one year of the period July 1, 1997, to July 1, 2000. (Gothold Decl.,

13

Exs. 1-3 (#16).) OneBeacon's claims in the present action are based on two of ProBuilders' policies with Arndell Construction, Policy No. TRI 3600034 and Policy No. TRI 3600087. (Podesta Decl., Exs. A, B. (#9).) These policies contain (at least as relevant here) identical terms, covering the periods July 19, 2002, to July 19, 2003, and July 19, 2003, to July 19, 2004, respectively.[2] (Id.)

The policy terms relevant here relate to ProBuilders' duty to provide a defense against suit to Arndell Construction. Section I(A)(1)(a) of the "Commercial General Liability Coverage Form" of both ProBuilders policies states that ProBuilders is obligated to defend Arndell Construction "against any suit seeking [damages for bodily injury or property damage to which this insurance applies] provided that no other insurance affording a defense against such a suit is available to [the insured]." (Podesta Decl., Exs. A, B (#9).) The same section notes certain limitations of this duty, including that ProBuilders "will have no duty to defend any insured against any suit seeking damages . . . to which this insurance does not apply." (Id.)

In addition, section IV(8)[3] of the "Commercial General Liability Coverage Form" of ProBuilders' policies contains further limitations on ProBuilders' obligations that apply "[i]f other

---

[2] ProBuilders has also submitted evidence of two other insurance policies it issued to Arndell Construction, covering the following two years until July 19, 2006. (Podesta Decl., Exs. C, D (#9).) These two later policies, however, are not presently at issue in this case.

[3] This section is titled "Other Insurance, Deductibles and Self-Insured Retentions," a circumstance that is in some tension with ProBuilders' assertion that "the provisions of the ProBuilders' policy at issue are not 'Other Insurance' clauses." (D.'s Memo. at 12 (#6).)

insurance is available to an insured for a loss we cover under Coverages A or B of this policy." (Id.) Specifically, where other insurance is available, the ProBuilders policies are "excess over any other insurance . . . whether such insurance is primary, excess, contingent or contributing . . . ." (Id.) Further, this section states that "[w]hen this insurance is excess, we will have no duty under Coverage A or B to defend any claim or suit that any other insurer has a duty to defend." (Id.)

### 4. Duty to Defend

An insurance company's duty to defend its insured arises from the provisions of the insurance policy. United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1158 (Nev. 2004); Allstate Ins. Co. v. Sanders, 495 F. Supp. 2d 1104, 1106 (D. Nev. 2007). Ambiguous terms in an insurance policy will be construed broadly, affording the greatest possible coverage to the insured. See Harvey's Wagon Wheel v. MacSween, 606 P.2d 1095, 1098 (Nev. 1980); Farmers Ins. Group v. Stonik, 867 P.2d 389, 391 (Nev. 1994). Nevertheless, the Court must neither "rewrite contract provisions that are otherwise unambiguous," nor "increase an obligation to the insured where such was intentionally and unambiguously limited by the parties. Capitol Indem. Corp. v. Wright, 341 F. Supp. 1152, 1156 (D. Nev. 2004) (internal citations omitted).

Under Nevada law, an insurer "must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy." Allstate, 495 F. Supp. 2d at 1106 (quoting Rockwood Ins. Co. v. Federated Capital Corp., 694 F. Supp. 772, 776 (D. Nev. 1988).) Even if coverage is only "arguable or possible," a

15

duty to defend arises. <u>United Nat'l Ins.</u>, 99 P.3d at 1158 (citing <u>Hecla Mining Co. v. N.H. Ins. Co.</u>, 811 P.2d 1083, 1090 (Colo. 1991) (stating that "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated")).

    The primary thrust of ProBuilders' motion for summary judgment is that there was "other insurance" available to Arndell Construction. It is undisputed that Arndell Construction receieved a full defense in the Hidden Meadows litigation from OneBeacon and other insurance carriers. On this basis, ProBuilders argues that under the policy terms quoted above it had no arguable or possible duty to defend Arndell Construction.

    ProBuilders' argument does not hold water: Nevada has adopted the "complaint rule," pursuant to which an insurer that seeks to avoid its duty to defend its insured may only do so by comparison of the complaint in the underlying litigation to the terms of the policy. <u>See</u> <u>United Nat'l Ins.</u>, 99 P.3d at 1158 ("Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy.") (citing <u>Hecla</u>, 811 P.2d at 1090).[4] The complaint rule is consistent

---

[4] Although the Nevada Supreme Court did not address the issue in <u>United National Insurance</u> — nor elsewhere, apparently — other jurisdictions following the complaint rule have recognized some exceptions to it. For example, where an insurer has provided a

1  with the principle that a duty to defend arises as soon as the
2  insurer "ascertains facts which give rise to the potential of
3  liability under the policy" and "continues throughout the course of
4  the litigation." Id. at 1158 (footnotes and internal quotation
5  marks omitted). Thus, the circumstance that Arndell Construction in
6  fact received a full defense in the Hidden Meadows litigation from
7  its other insurers is irrelevant to the inquiry into whether
8  ProBuilders, too, owed Arndell Construction a duty to defend.

9   The relevant complaint for determining whether ProBuilders had
10 a duty to defend is the complaint filed against Arndell Construction
11 in the Hidden Meadows litigation.[5] (Podesta Decl., Ex. F (#9).)
12 This complaint alleges property damage occurring in the period from
13 1994 to the date of the complaint, which is August 4, 2004. (Id. ¶
14 12-13.) The period covered by the ProBuilders policies at issue in
15 the present case — July 19, 2002, to July 19, 2004 — falls within
16 the temporal scope of the Hidden Meadows complaint. (Podesta Decl.,
17 Exs. A, B.) Though the ProBuilders policies are "excess" to any
18 other insurance that covers such claims, it is impossible to

---

defense and then seeks to recover defense costs, the insurer may rely on facts outside of the complaint to show that the incident resulting in liability was not covered by the policy. See Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1145 (10th Cir. 2008). No exception to the complaint rule, however, appears to apply in the present case.

[5] There were, apparently, two such complaints, and the two separate lawsuits were eventually consolidated. Although ProBuilders seems to have tried to submit both of these complaints as exhibits in support of its motion for summary judgment, it failed; in place of one of the two complaints, it instead attached what appears to be an order from the case issued by the Nevada state court. (Podesta Decl., Ex. G (#9); see D.'s Memo at 3 (#6) (describing Exs. F and G to the Podesta Decl. as "the two Complaints" from the Hidden Meadows litigation).) For present purposes, however, the one complaint from the Hidden Meadows litigation that is in our record is sufficient.

1 determine from the complaint against Arndell Construction what other
2 insurance, if any, was available to cover its potential liability in
3 the Hidden Meadows litigation.
4     We conclude, therefore, that the Hidden Meadows litigation
5 arguably or possibly sought damages within the coverage of the
6 ProBuilders policies, giving rise to a duty to defend under Nevada
7 law.  In light of this conclusion, ProBuilders' motion for summary
8 judgment will be denied.

### V. Conclusion

OneBeacon's complaint (#1) contains an adequate "short and plain statement of the claim."  Also, the complaint (#1) is not unintelligible, so no more definite statement is required.  Thus, ProBuilders' motion to dismiss (#10) is without merit.  Further, ProBuilders had a duty to defend Arndell Construction in the Hidden Meadows litigation; its motion for summary judgment (#5), premised on the notion that it did not have such a duty, must be denied.

**IT IS, THEREFORE, HEREBY ORDERED THAT** ProBuilders' Motion to Dismiss (#10) is **DENIED**.

**IT IS FURTHER ORDERED THAT** ProBuilders' Motion for Summary Judgment (#5) is **DENIED**.

DATED: August 3, 2009.

_Edward C. Reed_
UNITED STATES DISTRICT JUDGE